JOHN N. FULHAM, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 91390. Promulgated June 7, 1939.

*George H. B. Green, Esq.,* for the petitioner.
*Lewis S. Pendleton, Esq.,* for the respondent.

#### OPINION.

STERNHAGEN: The Commissioner determined a deficiency for 1935 of $1,184.89 in petitioner's individual income tax. He included in petitioner's gross income $5,338.82, being the net income of the Mary E. Fulham trust, which was made up of $4,691.96 dividends and $646.84 other income. He said in his notice of deficiency:

2 and 3. It is the opinion of this office that section 166, relating to the Revenue Act of 1934, which provides for taxing to the grantor income of trusts revocable by the grantor or by a person not having a substantial adverse interest in the income or principal of the trust applies in the instant case. Income received from the Mary E. Fulham Trust is therefore held to be taxable to you, since it appears that Mrs. Fulham does not have a substantial adverse interest.

The proceeding was submitted on a written stipulation of facts. The argument was confined to section 166. No reference has been made throughout to section 167.

Petitioner is a resident of Winthrop, Massachusetts. He was married to Mary E. Fulham, and throughout the year 1935 she and five children were living. On April 11, 1930, he executed the so-called Mary E. Fulham trust, naming himself and Dudley H. Dorr, trustees, to whom he transferred scheduled property. The trust provided:

CLAUSE FIRST: Until the death of my wife, MARY E. FULHAM, the trustees shall accumulate the income of the trust fund. During my wife's life the

trustees may pay to her at any time or from time to time any part or parts or the whole of the principal and/or accumulated income of the trust fund.

CLAUSE SECOND: Upon the death of my said wife the trustees shall divide the remaining principal and all unpaid, accrued, and accumulated income of the fund into shares so that there shall be one share for each child of mine then living and one share for the issue then living of each child of mine then dead but represented by such issue.

A. The trustees shall pay and distribute by right of representation to and among the issue of any deceased child the principal of a share to the income of which such child would have been entitled if living.

B. The trustees shall pay quarterly or oftener to each of such living children until he reaches the age of twenty-five (25) years the net income of his share.

C. Upon each such child reaching the age of twenty-five (25) years the trustee shall pay and distribute to him the remaining principal and all unpaid, accrued and accumulated income of his share free of all trust.

D. If any child of mine survives my wife and myself but dies before becoming entitled to a distribution of principal leaving issue him surviving, the remaining principal and all unpaid, accrued, and accumulated income of such deceased child's share shall be paid over and delivered to such issue per stirpes. If any such child so survives but dies before becoming entitled to a distribution of principal without issue him surviving, then the share of such deceased child shall be divided equally among my other children or their issue then living, that is to say, it shall follow the fortunes of and merge with the share then held in trust for or previously paid over to them, the surviving issue of any deceased child to participate in such distribution by receiving by right of representation property which would have been held in trust for or delivered to their ancestor if he had survived.

CLAUSE THIRD: The foregoing beneficial interests are subject to the following conditions and provisions:

A. Whenever any share or fund is held for any person the trustees may in their discretion pay to any such person at any time or times or from time to time any part or parts or the whole of the principal of his or her fund or share.

B. Whenever in this instrument it is provided that upon the death of a beneficiary his or her interest in income or principal or both will shift to another beneficiary, I direct that the latter beneficiary shall be as fully entitled to unpaid and accrued income as if it were current income, and that no right to such income shall belong to the estate of the deceased beneficiary.

C. Whenever by reason of the death of a beneficiary hereunder the share of any other beneficiary is increased, I authorize the trustees to hold in trust the entire amount or any part of such increase subject to the general provisions of this instrument irrespective of the fact that they may have distributed in whole or in part the original capital of a share or fraction of a share thus augmented.

D. All provisions in this instrument for the payment of any sum whether principal or income, held on an active trust are subject to the further provision and condition that said principal or income shall be inalienable and not subject to be reached or applied by any creditor of the person entitled thereto.

E. So far as the trustees are directed to pay income to any beneficiary they may in their discretion expend the same for his or her use or benefit, and they shall have full power to determine what expenditures are for the use or benefit of any beneficiary. So far as the trustees are directed to pay income to any beneficiary they may in their discretion accumulate said income or any part or

parts thereof and retain the accumulations as they may be invested from time to time in a separate account, and they may in their discretion pay out such accumulations or any part or parts thereof at any time or times to the person or persons entitled to the income at the time of each such payment.

F. Whenever any principal vests in any person and the trustees are directed to pay and distribute to such person his share, the trustees may in their discretion retain the legal title to the share of such person to hold for such person for any period until he or she reaches the age of twenty-one (21) years, with all the powers, provisions, rights, exemptions, privileges, and immunities herein set forth and with the further power to apply any part or parts of such share without distinction as to principal and income for the benefit of the beneficiary.

G. It is possible that under the specific provisions of this instrument some interests may not vest within the time limited by the rule against perpetuities. I therefore provide that in spite of any such specific provisions all interests shall vest at the latest twenty-one (21) years after the death of the survivor of my said wife and my children now living; and in each such case the remaining principal and all unpaid, accrued, and accumulated income of each fund or share which has not previously vested shall then be distributed to the person then entitled to the income thereof.

CLAUSE FOURTH: I give to the trustees hereunder and their successors the following powers, rights, and exemptions in addition to and not in limitation of any powers given otherwise in this instrument or by rules of law and make the following provisions concerning them:

A. While said Dorr is living he shall keep the books of account, and shall be the managing trustee.

B. All trustees shall have the same power of disposition of and management over the property as if they were the absolute owners free of all trust. Without limiting such powers, they shall specifically have power to buy, exchange, sell, pledge, mortgage, invest, reinvest, and borrow, when, as, how, and what they please irrespective of rules of law, including the power to lend money to any person including any trustee or beneficiary with or without security, to lease for terms longer or shorter than the active trusts, to compromise or arbitrate any matter, to decide irrespective of rules of law what is income and principal, and all questions between income and principal, and all questions between persons successively entitled to income, to hold and carry real and personal property in any name without indication of any trust, to hold, manage, and invest trust funds or shares in one fund or divided in such way as the trustees may choose; and in distributing the trust funds among the beneficiaries to distribute wholly or partially in kind and/or to sell to distribute, with power to transfer investments and to convey real estate or any interest therein (whether separate or undivided) as part or the whole of the share of any person with or without transferring or conveying similar property to any other person at such valuations as the trustees shall deem just, which valuations shall be conclusive.

C. No trustee shall be liable, except that each shall be liable for his own fraud or embezzlement.

D. The trustees shall have power and authority to execute, deliver, and acknowledge all necessary or proper deeds and other instruments in writing incident to any of their power and authority.

E. Any trustee may by a writing delegate his power at any time or times for any period or periods to another trustee.

F. Any account of the trustees or any action by them or any charge made or allowed by them approved in writing by a majority of the Committee shall be binding on all persons (whether in being or not) who are then or may become interested in the trust fund.

G. Any trustee may resign by a written instrument signed by him.

H. No bond, surety, or security shall be required of any trustee.

CLAUSE FIFTH : I hereby create in JEANNIE L. RONALD, of Boston, Suffolk County, Massachusetts, ARTHUR L. PARKER, of Somerville, Middlesex County, Massachusetts, and NICHOLAS L. FULHAM of said Winthrop, hereinafter referred to as the Committee, a joint power exercisable at any time or times or from time to time by any two of said Committee by a signed instrument in writing. I direct that each such writing shall forthwith be delivered to the trustees hereunder, but such delivery shall not be a prerequisite to its taking effect. This Committee by two of its members so exercised shall have the power to do the following things and the following provisions shall apply.

A. To change, alter, and revoke any of the trusts herein set forth, and declare new trusts of the property in any way or manner, and to change, alter, and revoke any or all of the provisions of this instrument. No exercise of this power shall exhaust it. It may, however, be released, extinguished, or restricted by a like instrument so signed by any two of the Committee. Without qualifying or limiting the foregoing power in any particular, it shall include the power to alter the number of, the powers of, and the succession among the trustees, the power to remove trustees, the power to appoint successor trustees, the power to appoint additional trustees, and the power to alter the number of, the power of and the succession among the Committee, and to appoint additional members of the Committee and successor members of the Committee.

B. Any of the persons in whom said joint power is vested may resign at any time by a signed instrument delivered to any of the Committee or any trustee hereunder.

C. In case the number of Committee shall at any time be less than the number required by the provisions then in force a vacancy or vacancies shall be filled by an instrument in writing signed by a majority of the remaining members of the Committee and delivered to any trustee. The person filling such vacancy shall have the same powers as if originally named, and any additional member of the Committee shall have the same powers as if originally named. No personal liability shall attach to any member of the Committee for any reason.

D. A certificate signed by a majority of the Committee as it may be composed from time to time certifying to a change in the trustees or the Committee or to any other fact affecting the trust fund or the trust instrument or to any alteration, change, or revocation of any of the trusts or any of the terms of this instrument shall be conclusive evidence thereof.

The committee on June 25, 1932, modified the instrument as follows:

At the end of Paragraph A of Clause Fifth of said trust instrument, we insert the following:

It is further provided, however, that the power created in Paragraph A of Clause Fifth of the trust instrument shall not be exercised while MARY E. FULHAM is living and competent to act in any manner so as to revest in the creator JOHN N. FULHAM any part or all of the corpus or income of the trust fund, unless the exercise of such power is consented to in writing by said MARY E. FULHAM. In so far as the Committee may have any power to alter, amend, or revoke the proviso contained in the last sentence, they hereby relinquish and extinguish such power.

No part of the net income of the trust has been paid to petitioner.

The argument is made to turn first on the question whether Mary E. Fulham had what the statute calls a substantial adverse interest

in the disposition of the corpus. It is primarily necessary, therefore, to examine the trust instrument and the supplement to learn what the wife's place in the trust scene is. She is expressly mentioned in but two places. In clause first she is named as the person until whose death the trustees shall accumulate the trust income and during whose life "the trustees may pay to her" at any time any part of the corpus or accumulated income. By the supplement to clause fifth it is her consent which is made the condition of the exercise of the committee's power to change, alter, or revoke the trust. These, it seems to the Board, are not substantial adverse interests.

The wife was not a beneficiary, and it is apparent throughout the instrument that she was not so regarded. The word "beneficiaries" is used several times and quite obviously it means the children of the settlor, any one of whom might die before the settlor, with or without issue, and thus leave a problem. The wife was given no right to demand anything from the trustees, although they were given the authority to pay her in their discretion. Since the settlor was a trustee, nothing the wife had was adverse to him, for one who may legally refuse the request of another is not subject to an adverse interest. The supplemental constriction of the committee's power to alter or revoke the instrument is also something different from a substantial adverse interest. It is, in fact, no interest at all, and certainly not a substantial interest. It is but the power of consent without which the trust remains fixed. If one creates a trust with the power to revoke, dependent upon the written consent of X, this is not to create in X a substantial adverse interest even though X be the settlor's wife. X must have some right to trust benefit which is to some extent affected by his consent. We agree with the respondent that nothing in the instrument gives Mary E. Fulham a substantial adverse interest.

It is argued that even if the wife is not one having a substantial adverse interest, there is in petitioner no power to revest the corpus in himself. The trust holds the corpus and accumulates the income, and the purpose is clearly to provide for the children and their issue. Since there are five of them, they may reasonably be expected to survive their parents and take under the trust. They and they only are the persons having substantial interests in the trust. Neither of the trustees *qua* trustees has such an interest, *Reinecke* v. *Smith*, 289 U. S. 172; *Bowler* v. *Helvering*, 80 Fed. (2d) 103, and no one or all of the committee has an interest. If there be a power to revest, it is not substantially adverse to the settlor.

That there is such a power is clear from the provision that the committee may alter and revoke and that the trustees may deal with the property as their own. The settlor, being a trustee, is literally possessed throughout the taxable year 1935 of the power to revest in

himself title to all of the corpus of the trust in conjunction with persons not having any substantial adverse interest in the disposition of any part of the corpus or income. This is not a remote power which only vests upon the death of the children. It is a present power exercisable whenever the committee chooses to exercise it and the wife consents. It leaves the corpus as clearly in the control of the settlor as Congress apparently contemplated when section 166 was enacted. No one who was given a voice in the exercise of the power had any adverse interest and hence no material reason for resistance. To be sure, their refusal to act was final, but Congress apparently discounted that possibility and acted upon the belief that unless they had a "substantial adverse interest" they would not resist. This was reasonable enough to support the legislation.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

BLACK, concurring: I concur in the result reached in the majority opinion, but I do not agree with the reasoning by which such result is reached.

The majority opinion, in holding that Mary E. Fulham was not a person with a substantial adverse interest in the income or the principal of the Mary E. Fulham trust, in my judgment conflicts with our decision in *Jane B. Shiverick*, 37 B. T. A. 454. In that case, Jane B. Shiverick created a trust, reserving the power to revest in herself the corpus of the trust with the consent of her husband, Asa Shiverick, who was made cotrustee with the Cleveland Trust Co. Under the terms of the trust, after the decease of the settlor, in the event her husband was then living, so much of the income was to be paid him during his life as he might demand by a written instrument lodged with the trustee, and while he was the recipient of the income, the trustee was authorized to pay him from the principal of the trust such amounts as it should deem necessary or proper for his maintenance, support, and comfort.

Thus it will be seen that the right of the settlor's husband in the *Shiverick* case to share in the income of the trust or any of the corpus thereof, was contingent upon his surviving the settlor. Even though the husband's interest in the income and corpus of the trust was a contingent one, we held that such interest was "a substantial adverse interest" within the meaning of section 166 of the Revenue Act of 1932. On that point we said:

While his interest was contingent upon the death of his wife occurring before his decease, he might reasonably be expected to object to any change in the assets of the estate which would be inimical to his rights under the trust instrument in the event he outlived her. To that extent, at least, his

interest was adverse. * * * The property placed in trust by the settlor was very substantial in amount—more than a half million dollars in bonds alone, half of which were Government bonds. The interest on the bonds was more than $20,000 a year. His right to receive this amount, contingent though it was, is sufficient, we think, to justify us in holding that he had a substantial adverse interest.

In the Mary E. Fulham trust involved in the instant case the interest of Mary E. Fulham was contingent, but, in the light of what we said in the *Shiverick* case, it was a very substantial one. The settlor provided that "During my wife's life, the trustee may pay to her at any time or from time to time any part or parts of the whole of the principal and/or accumulated income of the trust fund."

Therefore, for the reasons above stated, I do not agree with the majority holding that the interest of Mary E. Fulham was not a substantial adverse interest.

However, under the doctrine announced by the Board in *Mary Ryerson Frost*, 38 B. T. A. 1402, it is my opinion that petitioner would be taxable on the income in question under section 167 of the Revenue Act of 1934, and it would seem that the same reasoning used in the *Frost* case would be equally applicable to section 166. In the *Frost* case, the grantor of the trust (Mrs. Frost) reserved a power, first in conjunction with her husband and after his death alone, to require the trustee to distribute to herself the trust principal, including a portion of the income which was to be accumulated. We held that under these circumstances the income was taxable to the settlor, Mary Ryerson Frost, under section 167 of the Revenue Act of 1934.

In the instant case, the power to revoke the trust and revest the accumulated income and corpus in the settlor was placed in the hands of a committee by clause fifth of the trust instrument. This clause fifth was amended June 25, 1932, so as to take out the committee the power to alone revoke during the life of Mary E. Fulham and to confer upon her the power "to consent in writing" to a revocation of the trust. This power to consent to revocation by Mary E. Fulham, during her lifetime, was of course to cease at her death and the power to revoke was again to rest in the hands of the committee, the committee clearly not being an adverse interest.

These facts, it seems to me, bring the instant case within the rule of the *Frost* case. For this reason, I concur in the result reached by the majority opinion but not in the reasoning by which such result is reached.

HARRON agrees with the above.

VAN FOSSAN, dissenting: The underlying and controlling question here is whether under the trust above set out Mary E. Fulham had a substantial adverse interest within the meaning of that term in section 166 (2) of the Revenue Act of 1934. If she did, the income of the trust was not taxable to the grantor and petitioner must prevail. If she did not, the contrary result is indicated. It is not contended that section 167 is applicable.

The right to change, alter, and revoke the trust under consideration was originally vested in a committee. In 1932, however, the committee, by formal action, had abridged the provisions of the trust and the question at issue must be decided in the light of such amendment or abridgement.

By this amendment the right to revest the corpus in the grantor, as originally granted to the committee, was changed so as to require the written consent of Mary E. Fulham. To make assurance doubly sure the committee formally relinquished and extinguished any power possessed by it to alter, amend, or revoke the provision requiring the consent of Mary E. Fulham. Such was the status in the taxable year.

Obviously, the committee acting alone, as it might prior to 1932, did not possess a substantial adverse interest. Accordingly, prior to 1932 the trust would have come within the provisions of section 166 (2). Subsequent thereto, as just indicated, this power, formerly vested in the committee, was conditioned on the written consent of Mary E. Fulham. Thus we arrive at the controlling question: Did Mary E. Fulham have a substantial adverse interest? In considering the question reference is made first to the trust provisions. Clause first provides:

CLAUSE FIRST: Until the death of my wife, MARY E. FULHAM, the trustees shall accumulate the income of the trust fund. During my wife's life the trustees may pay to her at any time or from time to time any part or parts or the whole of the principal and/or accumulated income of the trust fund.

Respondent contends that the quoted provision was permissive but not mandatory and that Mary E. Fulham could not have compelled payment to her of any part of the corpus or income. I can not agree. In construing a trust, the intent of the grantor is controlling. It is not to be assumed that the provisions of the trust were idle gestures, lacking in substance. A reading of the trust instrument convinces me that the grantor contemplated and intended that Mary E. Fulham, his wife, have the right and power to draw on the trust, both corpus and accumulated income, so far as her needs might require and that if need had arisen she could successfully have enforced her demands. It is noteworthy that the provision in question is placed in clause first of the trust instrument. It is also to be noted that clause second provides, "upon the death of my said

wife the trustees shall divide the *remaining* principal and all *unpaid*, accrued and accumulated income", etc., thus confirming the suggestion that the grantor contemplated the payments to Mary E. Fulham. I am of the opinion that under the trust instrument Mary E. Fulham was a beneficiary of the trust holding a substantial adverse interest in the corpus and income thereof. See *Jane B. Shiverick*, 37 B. T. A. 454; *Smith* v. *Commissioner*, 59 Fed. (2d) 56 (C. C. A., 1st Cir.) ; *Bessie R. Jones*, 27 B. T. A. 171. Entertaining this view, it follows that I can not concur in the opinion of the majority. I do not believe that the trust here in question falls within the provisions of section 166 (2) of the Revenue Act of 1934.

ARUNDELL agrees with this dissent.